FILED
CLERK
11/14/2012 4:03 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ALVARO CABRAL and JASON CABRAL,

                          Petitioners,
                                            MEMORANDUM & ORDER
          -against-                         12-CV-3945(JS)


FRANK STRADA, Warden, Metropolitan
Detention Center, Brooklyn, New York,

                          Respondent.
----------------------------------------X
APPEARANCES
For Petitioner Alvaro:    Richard W. Levitt, Esq.
                          Levitt & Kaizer
                          40 Fulton Street, 23rd Floor
                          New York, NY 10038

For Petitioner Jason:     Richard W. Levitt, Esq.
                          Levitt & Kaizer
                          40 Fulton Street, 23rd Floor
                          New York, NY 10038

                          Edward V. Sapone, Esq.
                          Law Offices of Edward V. Sapone
                          40 Fulton Street, 23rd Floor
                          New York, NY 10038

For Respondent:           Nichole Boeckmann, Esq.
                          Christopher Caffarone, Esq.
                          United States Attorneys Office
                          Eastern District of New York
                          610 Federal Plaza
                          Central Islip, NY 11722
```

SEYBERT, District Judge:

        Alvaro Cabral ("Alvaro") and Jason Cabral ("Jason" and together "Petitioners") petition this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On September 28, 2012 this

Court held a hearing on the habeas petition. The Court DENIED the Petition and indicated that a formal opinion would follow. Articulated below are the Court's reasons for denying the Petition as well as the conditions of Petitioners' pre-trial detention to which Respondent has agreed.

BACKGROUND

Petitioners were indicted, originally under seal, on May 10, 2012. See United States v. Benitez, et al., 12-CR-0336. They were initially housed at the Metropolitan Detention Center in Brooklyn, New York ("MDC") and thereafter transferred to Nassau County Correctional Center ("NCCC").

While at the NCCC, officials observed several members of the Bloods gang surround Alvaro. (Docket Entry 3.) Officials believed that the Bloods were going to assault Alvaro, and therefore intervened. (Docket Entry 3.)

Shortly after the incident, Petitioners were sent back to the MDC, where they have been held in the Special Housing Unit ("SHU") since June 22, 2012. (Docket Entry 1.) Petitioners complain that they are confined to a small cell twenty-three hours a day (twenty-four hours on weekends), without access to family, without privileges otherwise afforded the general population inmates, and with only one social phone call per month. (Docket Entry 1.) As a result, Petitioners allege that they "suffer increasing psychological stress" which

threatens their well-being and impedes their ability to assist counsel in preparing their defense. (Docket Entry 1.)

Petitioners allege that their designation to the SHU is: (1) "not reasonably related to and necessary to achieve a legitimate institutional objective," in violation of Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861 (1979), and (2) a violation of the Due Process Clause of the United States Constitution. In response, the Warden of the MDC ("Respondent"), argues that Petitioners were placed in the SHU due to safety concerns. According to Respondent, there are indications that a gang directive honored by both the Bloods and the Latin Kings has been issued to physically assault Petitioners on sight.

On August 23, 2012, this Court held an ex parte hearing during which Respondent submitted, under seal, further reasons for keeping Petitioners in administrative detention. This Court held additional proceedings on September 28, 2012.[1] The parties' arguments were heard and the Court denied the Petition on the record.

---

[1] Citations to the September 28, 2012 hearing transcript are hereinafter abbreviated "Tr. ___".

DISCUSSION

I. Legal Standard[2]

In Bell v. Wolfish, the United States Supreme Court discussed the applicable standards in determining whether the conditions of a defendant's pre-trial detention violated his constitutional due process rights. 441 U.S. at 538-39. Wolfish essentially established a two-part test:

> [F]irst, the court must determine if the condition is specifically imposed for the purposes of punishment or for a legitimate governmental purpose, secondly, if evidence of punishment is lacking, this court must determine if the restriction is "reasonably related" to a legitimate objective or constitutes an exaggerated response. If a reasonable relationship can be established, punishment is not present and the Due Process clause is not violated.

United States v. Basciano, 369 F. Supp. 2d 344, 350 (E.D.N.Y. 2005) (quoting Boudin v. Thomas, 533 F. Supp. 786, 788-89 (S.D.N.Y. 1982)). In making this determination, "prison administrators should be accorded wide-ranging deference in the

---

[2] Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under . . . any [ ] Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e (2007). Although the PLRA's statutory requirement does not apply to habeas petitions, "judicial exhaustion requirements that govern habeas proceedings still have force . . ." United States v. Basciano, 369 F. Supp. 2d 344 (E.D.N.Y. 2005). Here, Petitioners have sufficiently exhausted their administrative remedies. (Tr. 2.) Petitioners filed a BP-8 form on July 14, 2012 and a BP-9 form on July 16, 2012. Petitioners did not receive a response to either.

adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Wolfish, 441 U.S. at 547; accord Defreitas v. Lindsay, No. 08-CV-0052, 2008 WL 4850195, *3 (E.D.N.Y. Nov. 6, 2008).

II. Petitioners' Confinement in the SHU is Constitutional

Respondent has adequately demonstrated that Petitioners' designation in the SHU is the result of well-founded safety concerns, rather than a means of punishment. The MDC has learned that gang members surrounded Alvaro, seemingly in an attempt to assault him, during Alvaro's brief stay in the NCC. (Docket Entry 3.) Furthermore, the MDC has information that members of the Latin Kings gang have issued a directive to physically assault Petitioners on sight. (Docket Entry 3.) Petitioners were indicted in connection with the deaths of two Latin King members. This evidence, in conjunction with the MDC's proffer of proof during the ex parte hearing, convince the Court that the MDC has a reliable basis upon which to designate Petitioners to the SHU.

Security, both of the inmate as well as of other inmates and prison staff, is a legitimate governmental purpose. See Wolfish, 441 U.S. at 546 ("Maintaining institutional security and preserving . . . discipline are essential goals that may require limitation or retraction of the retained

5

constitutional rights of both convicted prisoners and pretrial detainees."), United States v. McTier, No. 05-CR-0401, 2006 WL 2707622, at *3 (E.D.N.Y. July 20, 2006) (administrative detention may be used where there is a need for long-term protection). Indeed, this is true even when the inmate does not believe that there is a security concern and does not want protection. See Defreitas, 2008 WL 4850195, at *3 ("Petitioner's contention that the MDC cannot confine him for his own protection against his wishes is without merit."). Accordingly, Petitioners' placement in the SHU is not punitive.

Furthermore, Petitioners' administrative detention is reasonably related to the legitimate governmental objective of safety. See McTier, 2006 WL 2707622, at *5 (maintenance of security justified administrative detention). There are no possible alternatives that would allow the MDC to place Petitioners into the general inmate population. (Docket Entry 3.) See Petrucelli v. Hasty, 605 F. Supp. 2d 410, 429-30 (E.D.N.Y. 2009) (confinement in the SHU did not violate prisoner's due process right where prisoner posed high security risk and only alternative was general population). The threat to Petitioners is gang-related. There are no units within the MDC that do not contain gang members or prospective gang members and it would be virtually impossible to create such a unit. (Docket Entry 3.) Gang members are generally self-identified,

and it would be difficult to discern gang members of which the MDC is unaware or inmates who may decide to become gang members while imprisoned. (Tr. 13.)

Although Petitioners' confinement in the SHU is constitutional, the Court will address some of the specific conditions to which Petitioners are subject. See Basciano v. Martinez, No. 07-CV-0421, 2007 WL 2119908, *7-8 (E.D.N.Y. May 25, 2007) (finding that although confinement in the SHU was constitutional, non-contact visits with attorneys constituted an exaggerated response to security concerns). Petitioners have alleged that the MDC has significantly limited their computer and telephone access, their ability to consult with religious advisors, and visits with their children and family. At the September 28, 2012 hearing, the MDC indicated their willingness to accommodate Petitioners on these matters and to potentially provide Petitioners with educational materials. (Tr. 23-26, 31.) On October 4, 2012, the MDC sent a letter to the Court via facsimile delineating its position on these issues and the practicalities of accommodating Petitioners.

In accordance with the Court's rulings during the September 28, 2012 hearing and pursuant to the MDC's October 4, 2012 letter, the following conditions shall apply to Petitioners: (1) Petitioners will have access to a computer four times a week for a minimum of two hours each time; (2) religious

services at the MDC will contact Petitioners and inquire regarding religious counseling; (3) the MDC will allow Petitioners two social phone calls per month; (4) the MDC will provide Petitioners with books which Petitioners may use for independent study; and (5) if Petitioners inform the Captain or the SHU Lieutenant approximately a week in advance, the MDC will make special accommodations for Petitioners to visit with their children in the general population visiting room during the time regularly reserved for attorney visits.

CONCLUSION

For the reasons set forth above, Petitioners' application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED. However, the aforementioned conditions shall apply to Petitioners' pre-trial detention.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: November 14, 2012
       Central Islip, NY